UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PHILLIP J. YODER | Case Nos. 3:17-CR-30 JD<br>3:18-CR-87 JD<br>3:21-CV-291 JD<br>3:21-CV-289 JD |

**OPINION AND ORDER**

After entering into a plea agreement with the Government, Defendant Philip Yoder pleaded guilty on February 28, 2019, to three counts of a Superseding Indictment in Cause 3:17-CR-30: Wire Fraud (18 U.S.C. § 1343); Mail Fraud (18 U.S.C. § 1341); and Bank Fraud (18 U.S.C. § 1344). At the same time, he pleaded guilty to a one-count Indictment in cause 3:18-CR-87: Making a False Declaration, Certificate, and Verification Under a Chapter 11 Filing (18 U.S.C. § 152(3)). The Court held a combined sentencing hearing in both cases and sentenced Mr. Yoder to 87 months of imprisonment on each of the three counts in the first case and 60 months of imprisonment on the one count in the second case, all to run concurrently, for a total term of 87 months. Mr. Yoder filed in each case a motion pursuant to 28 U.S.C. § 2255 requesting that his guilty pleas and sentences be vacated. Initially, the Government objected to Mr. Yoder's motions as untimely seeking their dismissal (DE 163 in cause 3:17-CR-30; DE 63 in cause 3:18-CR-87) but, after the matter was briefed, the Government conceded that Mr. Yoder had no access to the law library and did not otherwise contest his equitable tolling argument[1] (DE 170 in cause

---

[1] "To qualify for equitable tolling, a [movant] must show: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Lombardo v. United States*, 860 F.3d 547, 551 (7th Cir. 2017).

3:17-CR-30; DE 72 in cause 3:18-CR-87). Among other things, the Government conducted its own investigation into Mr. Yoder's conditions of confinement during the peak of the Covid-19 pandemic and found that his representations about being locked down without access to the law library were true. Without more from the Government, and without any indication that Mr. Yoder was otherwise able to litigate, the Court acknowledged the Government's concession and directed the parties to brief the merits of Mr. Yoder's motions and that briefing is now completed. (DE 174.) *Cf. United States v. Williams*, No. 21C4025NO17CR446, 2022 WL 2208855, at *3 (N.D. Ill. June 21, 2022) (finding no equitable tolling where defendant was able continue "an extensive compassionate release litigation while the § 2255 statute of limitations period was running"); *see also Moore v. Battaglia*, 476 F.3d 504, 508 (7th Cir. 2007) (remanding so the district court could ascertain the adequacy of the prison law library and whether the state prevented the Defendant from accessing the statute of limitations).

Mr. Yoder proposes multiple reasons for vacating his guilty pleas and sentence, ranging from ineffective assistance of counsel to due process violations under the United States Constitution, but only one claim survives the initial review: his assertion that his trial attorney wrongly advised him that he would spend the rest of his life in prison if he did not accept the plea agreement offered by the Government. This claim requires an evidentiary hearing to ascertain the truth of Mr. Yoder's claim while all other claims will be dismissed.

### A. Factual Background

**(1) *Cause 3:17-CR-30***

As set out in the presentence report (DE 128 ¶¶ 10–17), in 2014 and 2015, Mr. Yoder and his codefendant Kyle Holt, were engaged in a scheme to defraud homeowners who were facing foreclosures on their homes. They would approach such distressed homeowners and convince

them to transfer title of the property in exchange for false promises of being able to avoid further foreclosure obligations. In particular, they falsely represented to the homeowners that they would handle their mortgage arrearages and the foreclosure process. Some believed these lies and transferred their interest in the property through quit claim deeds to entities controlled by the defendants. Mr. Yoder and Mr. Holt would then record the quit claims deeds at the local recorder's office. In reality, though, the quit claim deeds did not extinguish the outstanding mortgage debts. Regardless, Mr. Yoder would use the fraudulent interest in the property to secure to himself or others ownership of the property

In some instances, to further the fraud, Mr. Yoder would cause to be mailed a bogus document entitled "International Promissory Note" to the financial institution holding the outstanding mortgage debt, purporting to extinguish the debt. Mr. Yoder knew this was fiction and did this to cloud the title of the property. Simultaneously, Mr. Yoder would cause to be filed a fraudulent 'Satisfaction of Mortgage' with the county recorder's office in an attempt to discharge the mortgage.

   (2) *Cause 3:18-CR-87*

In the second criminal case, Mr. Yoder was charged with bankruptcy fraud. Mr. Yoder filed for bankruptcy and, as part of the proceedings, falsely claimed as an asset a "billion dollar gold bond," purportedly issued by the United States Department of Treasury, knowing that the purported bond was not worth its weight in paper. When the trustee requested to see the original bond, Mr. Yoder moved to dismiss the bankruptcy case.

   (3) *Guilty Pleas*

On February 15, 2019, Mr. Yoder filed a combined plea agreement in each case. According to the plea agreement, Mr. Yoder "believe[d] and f[elt] that [his] lawyer has done all

3

that anyone could do to counsel and assist [him]." (DE 113 ¶ 11.) He also stated that he offered his plea "freely and voluntarily and of [his] own accord, and no promises have been made to [him] other than those contained in this petition, nor [has he] been threatened in any way by anyone to cause [him] to plead GUILTY in accordance with this petition." (*Id*. ¶ 12.) Mr. Yoder's plea agreement with the Government stated that he was giving up his right to appeal his conviction and sentencing on any ground other than ineffective assistance of counsel:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed. I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement. **With this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.**

(DE 113 ¶ 9(d) (original emphasis).) In addition, at the change-of-plea hearing, Mr. Yoder acknowledged under oath that he understood the waiver of his appeal rights or any post-conviction proceeding, other than a claim of ineffective assistance of counsel, as well as the other terms of the plea agreement. (DE 120 at 29–30, 36.) Mr. Yoder also stated that Mr. Wemhoff had properly represented him "in every way during the course of the proceedings" and that he was "absolutely" satisfied with his representation. (DE 120 at 8–9.) Mr. Yoder was asked under oath whether "anyone threatened [him] or anyone else, forced or pressured [him] or anyone else to make [him] plead guilty today" and he responded "No, sir." (*Id*. at 30.) He also responded that no one, including Mr. Wemhoff, had made any promises or predictions to cause him to plead guilty.(*Id*. at 30-31.)

4

Before the sentencing hearing, Mr. Wemhoff objected to the PSR on the grounds that the two-level enhancement for "sophisticated means" was improper under U.S.S.G. § 2B1.1(b)(10(C); that he should not have received the two-level enhancement under § 2B1.l(b)(9)(B) for lying during the course of a bankruptcy proceeding; and (3) that the amount of loss calculation was wrong. (DE 122.) At sentencing, this Court addressed Mr. Wemhoff's objections and ruled against Mr. Yoder on each of them. (DE 155 at 16–20.) The Court also found that a two-level enhancement applied for obstruction of justice under U.S.S.G. § 3C1.1 because Mr. Yoder absconded from pretrial release. (DE 155 at 20.). The revised guideline range was 78 to 97 months. (*Id*. at 22.) The Court imposed a sentence of 87 months imprisonment on each of Counts 1, 6, and 9 of the Superseding Indictment in cause 3:17-CR-30; and 60 months on Count 1 in cause 3:18-CR-87 (all to run concurrently) for a total term of 87 months. The Court also noted that, even if it had ruled in the defendant's favor on the objections, it would still have imposed the same sentence based on the § 3553(a) factors. (DE 155 at 35.)

Mr. Yoder did not appeal either his conviction or sentence with the Court of Appeals for the Seventh Circuit.

In moving to vacate his sentence pursuant to 28 U.S.C. § 2255, Mr. Yoder presents arguments that fall into two categories: that he received ineffective assistance of counsel during his plea negotiations and at sentencing in violation of the Sixth Amendment to the United States Constitution(Ground 1); and that Court and the Government violated his due process rights in violation of the Fifth and Sixth Amendments (Ground 2).

**B.     Standard of Review**

Section 2255(a) of Title 28 provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws

5

of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Further, "a Section 2255 motion is neither a recapitulation of nor a substitute for direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068) (7th Cir. 2006)).

An individual pursuing a § 2255 motion is entitled to an evidentiary hearing on his claim if he has alleged facts that, if proven, would entitle him to relief. *See Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016) (citing *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001)) (internal quotation marks omitted). However, a hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015). An evidentiary hearing is also not required "if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,' rather than 'detailed and specific.'" *Id.* (quoting *Kafo*, 467 F.3d at 1067).

The Court additionally notes that it is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe the pleadings liberally. *United States v. Rossiter*, 2016 WL 4611013, at *4 (N.D. Ind. Sept. 6, 2016) (collecting cases). Therefore, if a court can reasonably read the petitioner's pleadings to state a valid claim, the court should do so even if the pleadings do not

6

cite proper legal authority, confuse various legal theories, use poor syntax and sentence construction, or display a lack of familiarity with pleading requirements. *Id.* (citing *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)). A district court is not expected to assume the role of an advocate for a pro se litigant, however, and it cannot rewrite the litigant's petition to include claims that the litigant did not present. *Id.* The Court keeps these guidelines in mind as it assesses Mr. Yoder's claims.

C.   **Discussion**

**(1)   *Ground 1: Ineffective Assistance of Counsel***

(a)   Counsel's Performance at Sentencing

In Ground 1 of his motion pursuant to § 2255, Mr. Yoder suggests that he received ineffective assistance of counsel at the plea negotiation stage and at sentencing, in violation of the Sixth Amendment. The Sixth Amendment provides a criminal defendant with the right to counsel, U.S. Const. amend. VI, and "inherent in this right is that the defendant is entitled to the effective assistance of counsel." *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009) (citation omitted). In order to prevail on his claim for ineffective assistance of counsel, Mr. Yoder must establish (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *See Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

The first prong of the *Strickland* analysis requires that the Court determine if counsel acted "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Koons*, 639 F.3d at 351 (citing *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011)).

Furthermore, the Court "maintain[s] a strong presumption that the defendant received effective assistance," *Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003), and that the challenged conduct "might be considered a sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and quotation omitted).

The second prong of the *Strickland* analysis requires that there be a "reasonable probability that, but for the ineffective assistance, the result of the proceedings would have been different." *Recendiz*, 557 F.3d at 531. A "reasonable probability" that the result would have been different is a probability "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The Court will first analyze Mr. Yoder's claims that Mr. Wemhoff provided ineffective assistance of counsel at his sentencing. He states that Mr. Wemhoff provided him with ineffective assistance of counsel because he did not object before, or at sentencing, to:

- the Court combining both of his criminal cases for the purpose of sentencing;
- the loss amount under the guidelines;
- the sophisticated means enhancement; and
- the enhancement for misrepresentation in the course of a bankruptcy proceeding.[2]

None of these claims establish ineffective assistance of counsel. Mr. Yoder cannot show that Mr. Wemhoff's failure to object to the Court holding a combined sentencing hearing amounted to incompetence under prevailing professional norms. Moreover, he is incorrect in

---

[2] Initially, Mr. Yoder also claimed that Mr. Wemhoff failed to object to the obstruction of justice enhancement. However, in later filings, he conceded that Mr. Wemhoff made such an objection, although he maintains that Mr. Wemhoff should have also objected on the grounds of double jeopardy that occurred as a result of the Court combining his two criminal cases for the purpose of sentencing. (DE 160 in cause 3:17-CR-30; DE 60 in cause 3:18-CR-87.)

maintaining that Mr. Wemhoff did not object to the enhancements under the guidelines. And in any case, Mr. Yoder cannot show that Mr. Wemhoff's representation prejudiced him.

Mr. Yoder is under the impression that he was sentenced twice for the same conduct, but that is not what happened. Instead, although there was a single presentence report and a single sentencing hearing covering both cases, the Court sentenced him separately for his conduct in each of the cases. He was sentenced separately to 87 months in cause 3:17-CR-30 and to 60 months in cause 3:18-CR-87. While his total term of imprisonment is 87 months, his sentences are running concurrently and are not a singular sentence.

In addition, the grouping of Mr. Yoder's offenses for the purpose of establishing his offense level under the guidelines did not amount to punishing him twice for the same conduct. As the PSR sets out, the grouping of the offenses was authorized by the United States Sentencing Commission Guidelines:

> Violations of Title 18 U.S.C. §§ 1343, 1341 and 1344 as found in Counts 1s, 6s, and 9s of Cause 3:17-CR-30, as well violation of Title 18 U.S.C. § 152(3) as found in Cause 3:18-CR-87 may be indexed and found at U.S.S.G. § 2B1.1. As the offense level is determined largely on the amount of loss, all counts in both cases are grouped together pursuant to U.S.S.G. § 3D1.2(d). *See also* U.S.S.G. § 2B1.1, app. note 20.

(DE 128 ¶ 20.)

Next, Mr. Yoder is mistaken in his belief that Mr. Wemhoff did not object to the increases in the offense level under the guidelines. Mr. Wemhoff did object in writing to the loss amount, to the 2-level enhancement for misrepresentation during the course of a bankruptcy proceeding as "double counting," and to the enhancement for use of a "sophisticated means." (DE 129 at 5–10.) The Court overruled each of the objections (*Id*. at 17–20), after addressing the proposed enhancements on the merits, so his argument that Mr. Wemhoff provided ineffective assistance of counsel at sentencing is meritless.

9

But regardless of whether Mr. Wemhoff objected to the application of the guidelines or not, Mr. Yoder cannot show any prejudice because the Court made clear at sentencing that, even if the guidelines had been calculated different, he would have received the same sentence:

> I would further note that even if I calculated the guideline range differently in the first instance, I would vary to the same range based on my consideration of the 3553(a) factors as a whole. In considering the factors, the Court would note the underlying conduct itself, regardless of whether it triggers enhancements under the technical and sometimes obscure definitions of the guidelines. The Court has already explained its assessment of whether the guidelines properly account for the various pertinent factors here. Had the Court sustained the defendant's objections, the guidelines would fail to account for that conduct and the Court would vary to this same range and impose the same sentence to account for those factors.

(Id. at 35–36.) Therefore, there's no reasonable probability that, had the Court accepted Mr. Yoder's arguments about the application of the guidelines, the result of the proceedings would have been different. In short, Mr. Yoder has failed to satisfy either element under Strickland in relation to Mr. Wemhoff's performance at sentencing and those claims will be dismissed.

(b)     Counsel's Performance During Plea Negotiations

As for Mr. Yoder's claim that Mr. Wemhoff provided ineffective assistance of counsel at the plea negotiation stage, an evidentiary hearing is required to ascertain the factual basis of his assertion.

Mr. Yoder claims that Mr. Wemhoff threatened him into accepting the plea agreement by telling him that he would spend the rest of his life in prison if he did not take the Government's offer. He backs up this claim with a sworn affidavit in which he states that Mr. Wemhoff screamed and threatened him saying that, if he didn't accept the terms of the Government's plea agreement, he would spend the rest of his life in prison. (DE 156-1 at 6.) In his reply brief in support of his motion, Mr. Yoder suggests that Mr. Wemhoff was misinformed about his potential sentence if he went to trial and was convicted on all counts. In his affidavit, Mr. Yoder

10

represents that, had he known that even without the plea agreement, he was not facing a lifetime of imprisonment, he would have chosen to go to trial on the charges against him. He believes that he had a reasonable likelihood of being acquitted on at least some of the charges, which would have reduced the loss amount under the guidelines and the corresponding offense level.

In its response, the Government dedicates less than a page to Mr. Yoder's claims and rests its opposition on the fact that, at the change-of-plea hearing, Mr. Yoder assured the presiding judge that no one had made any threats against him or any promises to make him plead guilty. The Government argues that Mr. Yoder should not now be allowed to contradict what he told the judge under oath. The Court is not persuaded by the Government's argument as it does not appear that Mr. Yoder is alleging that the only basis of his claims is the purported threats.

"In order to make out a claim for ineffective assistance of counsel in the context of a guilty plea, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial." *Bethel v. United States*, 458 F.3d 711, 716 (7th Cir. 2006). "When assessing counsel's performance, [the Seventh Circuit has noted] that a reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." *Id*. at 717 (citing cases, including *United States v. Cieslowski*, 410 F.3d 353, 358-59 (7th Cir. 2005 (to prove inadequate performance, a defendant must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence). Therefore, "[t]he salient question is whether counsel undertook a good-faith effort to determine the applicable

facts and estimate the sentence. An inaccurate prediction of a sentence alone is not enough to meet the standard." *Bethel*, 458 F.3d at 717.

As a result of the charges against him, had Mr. Yoder gone to trial and been convicted on each count in both cases, he was facing the maximum penalties of 20 years for mail and wire fraud, 30 years for bank fraud (18 U.S.C. §§ 1343; 1341, & 1344), and 5 years for making a false declaration in a bankruptcy proceeding (18 U.S.C. § 152(3)). Under the sentencing guidelines, his criminal history category would have been IV and his final offense level would have been 27—the same as his adjusted offense level after he pleaded guilty—resulting in the sentencing guidelines range of 100—125 months of imprisonment. In 2019, when Mr. Yoder entered his guilty pleas, he was 41 years-old. According to the actuary tables, in 2019, the life expectancy for a male of that age was almost 38 years. Actuarial Life Table, https://www.ssa.gov/oact/STATS/table4c6.html (last visited November 2, 2022). While, at the time, no one could foretell what sentence the Court would impose, it is true that Mr. Yoder's position from the standpoint of the sentencing guidelines wasn't drastically different whether he chose to proceed to trial or plead guilty. Taking Mr. Yoder at his word, if Mr. Wemhoff told him that refusing to accept the Government's offer of the plea agreement would expose him to a life sentence, that may suggest that Mr. Wemhoff did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. At the same time, and again accepting Mr. Yoder's assertions as true, Mr. Wemhoff may have had a good faith belief that Mr. Yoder would receive maximum or consecutive sentences that would result in a life sentence. Mr. Wemhoff's conduct in this regard cannot be determined unless the Court holds an evidentiary hearing. *Cf. Bethel*, 458 F.3d at 717 ("Because the district court declined to hold a hearing, the record is wholly undeveloped on the issue of the efforts that [defendant's] lawyer undertook to

estimate [defendant's] sentence before recommending that [defendant] plead guilty.") For this reason, the Court will hold an evidentiary hearing on Mr. Yoder's claim that Mr. Wemhoff told him that he would spend the rest of his life in prison if he did not accept the Government's plea agreement.

Such a hearing is also proper because Mr. Yoder has sufficiently alleged that he would have elected to go to trial rather than plead guilty to select charges. Given that the 3-level reduction in the offense level for acceptance of responsibility resulted in a relatively modest reduction of the guidelines range (77–96 months), Mr. Yoder's assertion that he would have rather gone to trial with hopes of being acquitted on at least some of the charges is not too far-fetched. *See Pidgeon v. Smith*, 785 F.3d 1165, 1174 (7th Cir. 2015) (observing in the context of § 2254 analysis that defendants' claim that he would have gone to trial absent his counsel's incorrect advice about a lifetime sentence is "[m]ost obviously . . . supported by the common-sense notion that the threat of spending the rest of one's life in prison can induce a defendant to agree to just about anything to avoid that outcome"). Of course, this claim will also be examined at the evidentiary hearing.

**(2)** *Ground 2: Due Process Rights*

In Ground 2 of his motion pursuant to § 2255, Mr. Yoder suggests that the Court and the Government committed numerous violations of his due process rights under the Fifth and Sixth Amendments. For example, he argues that the Court wrongfully combined both of his cases for the purpose of sentencing and impermissibly relied on the relevant criminal conduct in one case to arrive at the sentencing decision in the other. Mr. Yoder also believes that combining the two cases for sentencing placed him in double jeopardy for the same offense. Finally, Mr. Yoder insists that the Court erroneously calculated the applicable offense level under the United States

13

Sentencing Guidelines. However, all of these issues are barred from collateral review because they were not raised on appeal, and the Court need not review them.

"When an issue is not raised on direct appeal, but later attacked collaterally via a petition for post-conviction relief, the petitioner will be barred from collateral review unless he can show good cause for failing to raise the issue and actual prejudice." *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002). "Additionally, a showing that a refusal to consider the issue would be a 'fundamental miscarriage of justice' can overcome the default." *Id*. By not appealing his cases and thus failing to raise the alleged due process defects on direct appeal, Mr. Yoder has procedurally defaulted such claims. Moreover, Mr. Yoder's default cannot be excused because he has not even attempted to show cause why these issues weren't brought before the court of appeals. Finally, there is no fundamental miscarriage of justice in the Court's barring of these issues from collateral review, as they are implicitly considered above, *supra* 8–10, and resolved on the merits in favor of the Government. Consequently, Mr. Yoder has defaulted his due process claims.

**D.    Miscellaneous Requests**

Along with his motions under § 2255, Mr. Yoder also filed motions requesting judicial notice and motions for immediate release.[3] In the two motions for judicial notice, he is asking the Court to note various docket entries for the proposition that he "was not convicted for bankruptcy fraud in [either case]" (DE 167 in cause 3:17-CR-30; DE 68 in cause 3:18-CR-87) but was sentenced for bankruptcy fraud nevertheless (DE 168 in cause 3:17-CR-30; DE 69 in cause 3:18-CR-87). Mr. Yoder is confused: he was both convicted of, and sentenced for,

---

[3] The Government did not respond to any of the motions, leaving the Court to sort out these matters on its own. While the motions lack merit, ours is an adversarial system, and the Court should not be put in a position to make rulings without the benefit of the opponent's input.

bankruptcy fraud, 18 U.S.C. § 152(3), in cause 3:18-CR-87 and only in cause 3:18-CR-87. This is evident from the docket entries in that case. (*See* DE 15 in cause 3:18-CR-87, Plea Agreement ("I agree to plead guilty to . . . to Count 1 in Cause Number 3:18-CR-0087-JD, which alleges a violation of Title 18, United States Code, Section 152(3)."); DE 21 in cause 3:18-CR-87, Order (Accordingly, the Court . . . ACCEPTS defendant Phillip Yoder's plea of guilty, ACCEPTS the plea agreement, and FINDS the defendant guilty of Count 1 of the Indictment, in violation of 18 U.S.C. § 152(3)."); DE 55 in cause 3:18-CR-87, Sent. Hrg. Tr. at 31 ("Mr. Yoder's been convicted for . . . committing fraud in bankruptcy proceeding.").) And since the Court is already aware of the documents filed in its cases, any suggestion of taking judicial notice regarding such documents is moot. But to the extent that Mr. Yoder is requesting a ruling that his guilty plea and sentence are inconsistent, such motions are denied on the merits.

Next for consideration are Mr. Yoder's two motions for immediate release. He asks that he be released to home confinement pending the adjudication of his § 2255 motions. He seems to suggest that, had his due process right not been violated, he would have received a shorter sentence and he would have already completed his term of imprisonment. In other words, he believes that he is likely to prevail on his § 2255 motions and therefore should be released from prison without additional delay. While the Court of Appeals for the Seventh Circuit has recognized that district courts "in habeas corpus and section 2255 proceedings have inherent power to admit applicants to bail pending the decision of their case," such power must be "exercised very sparingly." *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985). This is so for obvious reasons:

> The reasons for parsimonious exercise of the power should be obvious. A defendant whose conviction has been affirmed on appeal (or who waived his right of appeal, as by pleading guilty, or by foregoing appeal after being convicted following a trial) is unlikely to have been convicted unjustly; hence the case for bail pending

15

> resolution of his postconviction proceeding is even weaker than the case for bail pending appeal. And the interest in the finality of criminal proceedings is poorly served by deferring execution of sentence till long after the defendant has been convicted.

*Id*. Without opinion as to the merits of Mr. Yoder's only remaining issue in his § 2255 motion, at this juncture the Court can at least observe that his likelihood of success is not readily apparent. Accordingly, there is no basis for the Court to intervene and put on hold the finality of Mr. Yoder's conviction and sentence. Moreover, given the rulings of the Court, there is nothing to suggest an error in sentencing and that Mr. Yoder's sentence should be less than it is. The only issue remaining for the Court is whether his plea of guilty and plea agreement should be vacated as a result of ineffective assistance of counsel. Therefore, the Court denies his motions for immediate release.

**E.    Conclusion**

For these reasons, the Court—

- DENIES the Government's motions to dismiss (DE 163 in cause 3:17-CR-30; DE 63 in cause 3:18-CR-87);

- DENIES all of Mr. Yoder's claims set forth in his motions under § 2255 (DE 156 in cause 3:17-CR-30; DE 56 in cause 3:18-CR-87) with the exception of his claim that his trial lawyer provided him with ineffective assistance of counsel in relation to his entering the guilty pleas in the above-captioned cases. The latter claim requires an evidentiary hearing.

- GRANTS Mr. Yoder's motion to appoint counsel (DE 162 in cause 3:17-CR-30; DE 62 in cause 3:18-CR-87) because the Court will be conducting an evidentiary hearing, and REFERS this matter to the Federal Community Defenders for the appointment of counsel. *See United States v. Sewell*, No. 1:07-CR-53-HAB, 2020 WL 7632309, at *1

(N.D. Ind. Dec. 21, 2020) ("If an evidentiary hearing is held, the district court must appoint counsel for an indigent petitioner."). Upon the appearance of counsel, the Court will contact the parties to set further deadlines.

- DENIES AS MOOT Mr. Yoder's motions requesting judicial notice of Court documents (DE 167 & 168 in cause 3:17-CR-30; DE 68 & 69 in cause 3:18-CR-87), but to the extent that Mr. Yoder is requesting a ruling that his guilty pleas and sentences are inconsistent, such motions are DENIED as meritless.

- DENIES Mr. Yoder's motions for immediate release (DE 161 & 164 in cause 3:17-CR-30; DE 61 & 64 in cause 3:18-CR-87); and

- GRANTS Mr. Yoder's motion to amend and correct his motion to vacate (DE 160 in cause 3:17-CR-30; DE 60 in cause 3:18-CR-8).

SO ORDERED.

ENTERED: November 9, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court